IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

RICHARD COLINO,

      Appellant,

v.                                  Case No.  5D15-2567

ANA M. COLINO,

      Appellee.

_____/

Opinion filed August 26, 2016

Appeal from the Circuit Court
for Flagler County,
Michael S. Orfinger, Judge.[1]

Brett Hartley, of Brett Hartley, P.A.,
Aspen, CO, for Appellant.

Donald Appignani, Palm Coast,
for Appellee.

LAMBERT, J.

      Richard Colino ("Former Husband") appeals the final judgment dissolving his

marriage to Ana M. Colino ("Former Wife") following trial.  Former Husband argues that

---

      [1] Judge Orfinger did not preside over the trial or enter the final judgment on appeal. The trial judge recused himself post-judgment, and the case was eventually reassigned to Judge Orfinger, who entered an order denying a pending motion for rehearing.  No issue has been raised on appeal regarding the effect of the post-judgment recusal of the trial judge.

the trial court misinterpreted the parties' prenuptial agreement when it determined that the home located at 84 Pennypacker Lane, Palm Coast, Florida, ("Pennypacker property") was Former Wife's separate property and awarded the property to her. We agree.[2]

The evidence adduced at trial regarding the Pennypacker property was essentially undisputed. During the course of the marriage, Former Husband obtained a significant monetary settlement arising out of a personal injury claim. Former Husband initially placed the settlement proceeds into an annuity, but he eventually cashed out the annuity and deposited the funds into an account held by a limited liability company that he owned and controlled. Former Husband thereafter transferred the funds from the company account into an account titled solely in Former Wife's name. The Pennypacker property was then purchased from funds drawn from Former Wife's account, and the property was titled solely in Former Wife's name. Approximately eight months later, Former Wife transferred the property by quitclaim deed to Former Husband. Title to this property remained solely in Former Husband's name at the time of trial.

The parties' prenuptial agreement was admitted into evidence at trial.[3] Two sections of this agreement are material to the resolution of this appeal. Section 1, titled "Separate Property of Each Party," provides, in pertinent part:

> Except as otherwise expressly provided in this Agreement, each party shall keep and retain sole ownership, entitlement, control and power of disposal of his or her separate property of every kind and nature, now owned or hereafter acquired by such party, free and clear of any interest, rights or claims of

---

[2] Former Husband raised one other issue on appeal, which we affirm without further discussion.

[3] Former Wife has not challenged the validity of the agreement.

the other party by reason of the marriage or otherwise. These rights include the right to dispose of his or her separate property by gift, sale, testamentary transfer or in any other manner, and to encumber, pledge or hypothecate such property. Each party covenants and agrees not to make any claim or demand on the separate property of the other party or on the heirs, legal representatives, executors or administrators of the other party with respect to the separate property of the other party . . . .

Section 5 of the agreement is titled "Other Real Estate." This section states, in pertinent part:

The parties from time to time may own real property other than the marital residence. If a party acquires such property in his or her sole name, it shall be said party's separate property for purposes of this Agreement. . . . The rights of the parties with respect to such property shall be governed by this Agreement unless they agree to some other treatment of such property in a written instrument amending this Agreement.

At trial, neither party disputed that the Pennypacker property was subject to distribution pursuant to these two sections of the prenuptial agreement, nor was there evidence that the agreement had been amended. Despite this property being titled solely in Former Husband's name, the trial court found that the property was Former Wife's separate property. The court reasoned that, per the terms of the agreement, the property was "acquired" by Former Wife when it was originally purchased and titled solely in her name. The court further found that at the time Former Wife executed the quitclaim deed of the property to Former Husband, "[b]oth parties considered that [Former Husband] was already the owner of the property" because his funds had been used for the purchase. Therefore, the court concluded that neither party intended that the later quitclaim deed into Former Husband's name constituted an "acquisition" or "transfer" of ownership to him under the agreement.

3

"A trial court's interpretation of a prenuptial agreement is reviewed de novo, as such agreements are governed by the law of contracts." *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015) (quoting *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009)). "Where a contract is clear and unambiguous, it must be enforced pursuant to its plain language." *Id.* (citing *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011)). "In such a situation, 'the language itself is the best evidence of the parties' intent, and its plain meaning controls.'" *Id.* (quoting *Crawford*, 64 So. 3d at 1255). Furthermore, where, as here, we are addressing "a question of law arising from undisputed facts," our review is de novo. *Aills v. Boemi*, 29 So. 3d 1105, 1108 (Fla. 2010) (citing *Kirton v. Fields*, 997 So. 2d 349, 352 (Fla. 2008); *D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 314 (Fla. 2003)).

When Former Wife first acquired the Pennypacker property in her sole name, by the plain language of the agreement, this became her separate property. Section 1 of the agreement permitted Former Wife, as owner of this "separate property," the right to dispose of her property by "gift, sale, testamentary transfer or in any other manner," which Former Wife did by thereafter executing the quitclaim deed and transferring the property to Former Husband. At that point, the Pennypacker property became Former Husband's "separate property," and it remained his separate property when he filed his petition for dissolution of marriage. Furthermore, section 1 of the prenuptial agreement expressly provided that each party would not make any claim or demand on the separate property of the other party. Since neither party attempted to vacate or rescind the prenuptial agreement, the trial court was obligated to enforce its clear terms and distribute the Pennypacker property to Former Husband. Accordingly, we reverse the award of the

Pennypacker property to Former Wife and remand with directions that the trial court enter an amended final judgment, distributing this property to Former Husband.

Lastly, in its final judgment, the trial court recognized that, based upon the length of the parties' marriage and the terms of the prenuptial agreement, an award of alimony was permissible. The court found that Former Wife demonstrated a need for alimony but elected not to award alimony to her due, in part, to its equitable distribution of the parties' assets. In *Canakaris v. Canakaris*, 382 So. 2d 1197, 1202 (Fla. 1980), the Florida Supreme Court noted that trial judges in dissolution of marriage cases possess broad discretionary authority with various remedies available to do equity and justice between the parties and reminded the intermediate appellate courts to view the awards made by the trial court in its final judgment as being interrelated and not independent of each other. Because Former Husband will now own both the Pennypacker property and the parties' separate marital home,[4] we find it appropriate, consistent with *Canakaris*, for the trial court, on remand, to revisit its decision whether to award alimony to Former Wife. Additionally, since the distribution of the Pennypacker property to Former Husband may result in additional or imputed income to him, we also direct the trial court to reconsider the child support award. The court may receive additional evidence on these two matters.

REVERSED and REMANDED, with directions.

LAWSON, C.J., and PALMER, J., concur.

---

[4] Former Wife did not challenge distribution of the marital home which, pursuant to the terms of the prenuptial agreement, was also Former Husband's separate property.